IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 10, 2012

## STATE OF TENNESSEE v. MICHAEL GOODING

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-04774      John Fowlkes, Jr., Judge**

_____

**No. W2011-00970-CCA-R3-CD  - Filed July 25, 2012**

_____

After a jury trial, Defendant Michael Gooding was convicted of third offense driving under the influence of an intoxicant (DUI).  The trial court sentenced him to serve 160 days in the county workhouse.  Defendant's sole issue on appeal is a challenge to the sufficiency of the evidence to sustain the conviction of DUI.  We affirm the conviction of DUI, third offense, but remand for entry of a corrected judgment setting forth the correct sentence of 11 months and 29 days, with all but 160 days suspended for DUI, third offense, and for designation that counts 1, 2, and 4 are merged with count 3.

**Tenn. R. App. P. 3 Appeal as of Right; Conviction of the Criminal Court Affirmed; Remanded for Entry of Corrected Judgment**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Michael Gooding.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; Susan Taylor, Assistant District Attorney General; and Edith Sellerd, Assistant District Attorney General; for the appellee, the State of Tennessee.

**OPINION**

## *I. Background*

Shelby County Deputy Sheriff Jennifer Peterson testified that she was on patrol when she encountered Defendant at approximately 1:00 a.m. on February 25, 2009.  Defendant's

car was sitting still in a driveway leading directly from Holmes Road to the parking area for New Sardis Baptist Church. Defendant's vehicle was on the outside of a locked gate situated across the driveway. The gate crossed the driveway approximately two car lengths from the edge of Holmes Road. The only way to drive any vehicle to the location where Defendant's vehicle was found was to drive on Holmes Road, a public highway in Shelby County. The tail-lights on Defendant's vehicle were on, the engine was running, the automatic transmission was in "drive," and the defendant was slumped over asleep. Deputy Peterson knocked on the window to try to wake up Defendant. He looked up at Deputy Peterson and then went back to sleep. Deputy Peterson repeated her efforts to awaken Defendant two more times before she was successful.

At the deputy's command, Defendant placed the transmission in "park." Defendant had difficulty removing from his wallet his driver's license in order to hand it to Deputy Peterson. She observed that Defendant had blurry, bloodshot, and watery eyes, his speech was slurred, and there was a strong odor of intoxicant on him. The deputy called for the sheriff's department's "DUI car" to come to the scene and then placed Defendant in the back of her patrol car. Defendant was unsteady, had difficulty getting out of his car, and Deputy Peterson had to hold on to Defendant and guide him to her patrol car. Deputy Michael Kraemer, who was in the "DUI car," arrived and began to give field sobriety tests to Defendant. Defendant admitted that he had "like five drinks around [ ] 8:00 o'clock." Deputy Peterson testified that after performing very poorly on one field sobriety test, Defendant stated "that he couldn't do the test and that it didn't matter, he's already messed up." Deputy Peterson also testified that she had driven down Holmes Road at least twice on the same shift that night without seeing Defendant before she found Defendant stopped in front of the gate.

Shelby County Deputy Sheriff Michael Kraemer testified that he was assigned to the DUI unit on the night Defendant was arrested. Deputy Kraemer went to the location of the New Sardis Baptist Church at 7705 East Holmes Road. He got Defendant out of Deputy Peterson's patrol car and both deputies brought Defendant to the front side of Deputy Kraemer's patrol car. Defendant "had a really hard time comprehending the instructions" for the "walk and turn" field sobriety test. He kept interrupting Deputy Kraemer's efforts to give instructions. One interruption was Defendant's request that he be allowed to "take a crap." Defendant ultimately started the attempt at the walk and turn test "several times too early," before being instructed to begin, and Defendant "just couldn't maintain his position." Defendant had difficulty going the first nine steps. He did not step heel to toe and he stepped off the imaginary line. When Defendant turned around, he could not perform the test to return to Deputy Kraemer. Defendant declined to attempt further filed sobriety tests. Deputy Kraemer testified that Defendant "just said he was messed up or something in effect that he couldn't do it - - I [Defendant] messed up and you have me or something to the effect of

that." Deputy Kraemer identified the implied consent form utilized in Defendant's case, and specifically noted the checklist on the back of the form where officers record their observations. Noted on the checklist for Defendant were (1) a strong odor of alcohol; (2) bloodshot watery eyes; (3) slurred speech, "mumbled big time;" (4) falling, swaying, and staggering; (5) Defendant was crying; and (6) Defendant was cooperative and polite, but had "slow reaction."

Defendant agreed to submit to a test on an intoximeter at the scene to determine his blood alcohol content. The test results showed Defendant's blood alcohol concentration to be 0.228.

Defendant did not present any proof.

The indictment in this case charged Defendant with DUI in four separate counts based upon four separate theories of guilt. Count 1 charged Defendant with DUI for driving or being in physical control of his vehicle on the parking lot of New Sardis Baptist Church, while being under the influence of any intoxicant. Count 2 alleged DUI *per se*, while driving or being in physical control of his vehicle with a blood alcohol concentration of 0.20 or more on the church's parking lot. Counts 3 and 4 were identical to counts 1 and 2, respectively, with the notable exception that counts 3 and 4 each alleged that Defendant's DUI occurred "upon a public highway."

The jury found Defendant guilty of all four counts. The trial court subsequently merged the convictions in counts 2, 3, and 4 with the conviction in count 1.

*Analysis*

In his brief Defendant concedes that there was sufficient evidence that he was in physical control of his vehicle and that he was under the influence of an intoxicant when arrested. In his first challenge to the sufficiency of the evidence he asserts that the State failed to prove beyond a reasonable doubt that the driveway where he was found inside his vehicle is a place "generally frequented by the public at large." At the time of Defendant's arrest, DUI was defined as follows:

> **55-10-401. Driving under the influence of intoxicant, drug or drug producing stimulant prohibited – Alcohol concentration in blood or breath. –** (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effect on the central nervous system; or

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more.

We deem it unnecessary to address Defendant's challenge to the sufficiency of the evidence under this theory. As noted above, the jury found Defendant guilty under three additional theories of DUI in counts 2, 3, and 4. The convictions on those counts were not dismissed by the trial court. Instead, they were properly *merged* with the conviction in count 1. Having been merged, the conviction in either count 2, count 3, or count 4 can be reinstated if necessary. An appellate court is allowed to review a trial court's merger of convicted offenses if the guilty verdicts have been approved by the trial court, and then reinstate a previously merged jury verdict if necessary. *State v. Morrow*, 72 S.W.3d 337, 342 n. 4 (Tenn. Crim. App. 2001) (citing *State v. Davis*, 613 S.W.2d 218, 221 (Tenn. 1981)).

Count 3 of the indictment specifically alleges that Defendant,

on February 25, 2009 in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully, while under the influence of an intoxicant, drive and physically control a motor vehicle upon a public highway in Shelby County, Tennessee, in violation of T.C.A. § 55-10-401 . . .

As to the evidence to support a conviction of count 3 Defendant states in his brief that

Therefore, [the] evidence did not support a conviction under the third and fourth charge of the indictment, which charged that the Defendant drove or physically controlled his vehicle on a public road. Defendant does not claim that he was not impaired when detained by officers, nor does he deny that he used the public road to reach the closed parking lot, but the evidence simply does not support the State's claim that Defendant drove on the public road while impaired.

We reinstate the jury verdict of guilty as charged in count 3 of the indictment, and merge the guilty verdicts in counts 1, 2, and 4 with the conviction in count 3. We thus address Defendant's issue challenging the sufficiency of the evidence to sustain the conviction in count 3.

It is correct that no witness testified that he/she observed Defendant driving on Holmes Road or any other public road in the early morning hours of February 25, 2009, prior to Defendant's arrest. However the circumstantial evidence that Defendant drove and was in physical control of his vehicle on Holmes Road while under the influence of an intoxicant

-4-

is sufficient to sustain his conviction. Recently in *State v. Dorantes*, 331 S.W.3d 370 (Tenn. 2011), our supreme court adopted the United States Supreme Court's standard for determination of whether circumstantial evidence is sufficient to support a conviction. In doing so our supreme court quoted the standard enunciated in *Holland v. United States*, 348 U.S. 121, 139-40 (1954):

> Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Dorantes*, 331 S.W.3d at 380.

When a defendant challenges the sufficiency of the evidence, the standard of review by an appellate court is whether "'after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999)).

A review of the evidence taken in a light most favorable to the State shows that a person would have to drive on Holmes Road, a public road, in order to turn his or her vehicle into the church's driveway where Defendant was found at 1:00 a.m. Defendant admitted to having had at least five drinks five hours earlier at 8:00 p.m. When he was found, his blood alcohol concentration was 0.228, and pursuant to Tennessee Code Annotated section 55-10-408, evidence of a blood alcohol concentration of 0.08 or more creates an inference that a defendant's ability to drive is impaired to constitute a violation of Tennessee Code Annotated section 55-10-401(a)(1). There was evidence that Deputy Peterson had driven by the driveway on her shift at least twice before seeing Defendant there, therefore narrowing the time frame of how long Defendant had been at the scene. Defendant was asleep in his still running car with the transmission in "drive." As noted by the state in its brief, the jury "could reasonably infer that the defendant had pulled off Holmes Road into the church driveway in an intoxicated state, such that he did not have the presence of mind to shut off his vehicle or even put it in park before going to sleep."

The basis of Defendant's argument is that the State did not disprove the theory that Defendant first pulled into the church's driveway and *then* drank himself "to the point of impairment." Under the standard approved in *Dorantes*, Defendant's assertion is without merit. Defendant is not entitled to the relief he seeks in this appeal.

## CONCLUSION

The conviction for DUI third offense is affirmed. However, we reinstate the conviction for count 3 and remand to the trial court for entry on an amended judgment showing a conviction as to count 3 and with counts 1, 2, and 4 merged with count 3. Also, the trial court shall correctly set forth the sentence as 11 months and 29 days with all but 160 days suspended.

_____
THOMAS T. WOODALL, JUDGE