# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 8, 2014 Session

## STATE OF TENNESSEE v. DANNAER BEARD

**Appeal from the Criminal Court for Shelby County**
**No. 09-04551      Mark Ward, Judge**

---

**No. W2013-00502-CCA-MR3-CD  -  Filed October 28, 2014**

---

A Shelby County jury found Appellant Dannaer Beard guilty of criminal attempt: second degree murder and two counts of aggravated assault.  The trial court sentenced him to an effective term of twelve years' imprisonment.  Appellant now challenges the sufficiency of the evidence to sustain his conviction for criminal attempt: second degree murder.  Appellant also argues that the trial judge erred in not merging the two aggravated assault convictions. Because a jury could find that Appellant's stabbing of the victim was a substantial step in a knowing attempt to kill Mr. Moore, we affirm the criminal attempt conviction. Additionally, we find that the two aggravated assault charges arose from a single incident, and we remand the case for entry of a single judgment noting merger of the two offenses in counts 2 and 3.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**, **and Case Remanded for Entry of Amended Judgment**

ROBERT L. HOLLOWAY, JR., S.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS  and CAMILLE R. MCMULLEN, JJ., joined.

Ruchie Patel (trial) and Samuel Rodriguez, III (appeal), Memphis, Tennessee, for the Appellant, Dannaer Beard.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Marlinee Iverson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

At approximately 7:00 a.m. on Sunday, February 1, 2009, Arlene Cunnigan's son went to Jarius Moore's residence to get a food stamp card from Mr. Moore's girlfriend, Keisha Dooley. Mr. Moore told the boy that Ms. Dooley was asleep and that he and Ms. Dooley would come to Ms. Cunnigan's house when she awoke. The boy left, but he returned a few minutes later with a message from Ms. Cunnigan to wake Ms. Dooley. Mr. Moore again told the boy he would bring Ms. Dooley to Ms. Cunnigan's house when she awoke. A short time later, Ms. Cunnigan came to the Moore residence, where she banged on the door and angrily demanded that Ms. Dooley give her the card. After Mr. Moore stopped Ms. Cunnigan from entering the home, she left. Mr. Moore then woke Ms. Dooley. Around 8:00 a.m., Mr. Moore, his brother, and Ms. Dooley were sitting in a truck outside the Moore home when Ms. Cunnigan and Appellant arrived. When Mr. Moore got out of the truck, Appellant accused him of being disrespectful to Ms. Cunnigan. Mr. Moore testified that Appellant then pushed him in the face. In the fight that followed, Appellant pulled Mr. Moore's jacket over his head, pinning his arms and obstructing his vision. Before Mr. Moore could free himself, Appellant stabbed him nine times. Mr. Moore first saw the knife as he tried to put up his hand to protect his face. Mr. Moore was unarmed during the encounter.

Mr. Moore was initially treated at Methodist North Hospital before being flown by helicopter to the Regional Medical Center ("the Med"), where he was treated by Dr. Ben Zarzaur, a general surgeon in the shock trauma center. Dr. Zarzaur's examination revealed wounds to Mr. Moore's right chest, lower left side, left upper back, and left forearm. Dr. Zarzaur was primarily concerned with the wounds he considered potentially life-threatening. Because the chest wound had been stapled and a drain tube inserted before Mr. Moore was transported to the Med, Dr. Zarzaur focused initially on the abdominal wounds. He surgically inserted a small camera below Mr. Moore's navel to check for internal injuries and damage to any organs. Fortunately for Mr. Moore, none of these wounds were deep enough to penetrate into the peritoneal cavity where the organs were located. However, x-rays revealed that the chest tube had not been inserted deeply enough. Dr. Zarzaur inserted a larger tube, allowing blood and air to drain properly. Mr. Moore remained in the hospital for three nights to allow time to remove the chest tube and to ensure his lungs stayed inflated.

A jury found Appellant guilty as charged of attempted second degree murder and two counts of aggravated assault against Mr. Moore. After a sentencing hearing, the trial court sentenced him to twelve years incarceration for the criminal attempt conviction and six years for each aggravated assault conviction, to be served concurrently. This appeal followed.

## II. Analysis

## A. Sufficiency of the Evidence

Appellant now argues that the evidence was insufficient to prove the elements required to support his attempted second degree murder conviction. The applicable standard of review when the sufficiency of the convicting evidence is challenged is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307 (1979). A verdict of guilt by a jury "removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *State v. Evans,* 108 S.W.3d 231, 237 (Tenn. 2003).

Second degree murder is the "knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). Tennessee Code Annotated section 39-11-106(a)(20) defines "knowing" to mean "that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of a person's conduct when the person is aware that the conduct is reasonably certain to cause the result."

Tennessee Code Annotated section 39-12-101(a) defines criminal attempt as follows:

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
(1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Focusing on the second part of the definition of "knowing," Appellant argues that there was no proof that he was aware that his conduct was "reasonably certain" to cause the death of Mr. Moore/ Rarely can the mental state of a defendant be proven by direct evidence. As pointed out in *State v. Inlow*, 52 S.W.3d 101 (Tenn. Crim. App. 2000), a jury often must

rely on circumstantial evidence to infer the intent of a defendant. Circumstantial evidence can include such things as the "character of the assault, the nature of the act and . . . all the circumstances of the case in evidence." *Id.* at 105.

The facts in this case are very similar to the facts in *Inlow.* Inlow stabbed the victim in the groin area and abdomen during a fight. He was convicted of attempted second degree murder. On appeal, he claimed there was no evidence proving that he intended to kill the victim. This court found that the "jury could have found that the defendant's conduct was reasonably certain to cause the victim's death . . . and that he intended to kill the victim based upon the use of a deadly weapon, the seriousness of the wounds inflicted, and the Appellant's statements." *Id*.

The facts of this case are also similar in certain regards to the facts in the unreported case, *State v. Martin Boyce*, No. W2012-00887-CCA-R3-CD, 2013 WL 4027244 (Tenn. Crim. App. Aug. 6, 2013). Mr. Boyce was convicted of attempted second degree murder arising from an incident in which he fired multiple shots at an unarmed victim, striking the victim in his feet. Mr. Boyce claimed that there was no proof of intent to kill. Again, this Court held that a jury could infer intent from the circumstantial evidence. *Id* at 10.

Viewed in the light most favorable to the State, the proof established that Appellant stabbed the victim nine times. The victim was unarmed during the fight. Appellant confronted Mr. Moore and accused him of disrespecting Ms. Cunnigan. Mr. Moore was stabbed in the arm when he attempted to protect his face. Appellant then fled the scene. Witnesses said Mr. Moore was bleeding heavily and fading in and out of consciousness. Mr. Moore's chest and abdominal wounds were characterized by Dr. Zarzaur as life-threatening, including the risk of a collapsed lung. There is sufficient evidence from which the jury could have inferred Appellant acted with the intent to commit the knowing killing of Mr. Moore, and that the stabbing constituted a substantial step toward that end.

### B. Merger of Convictions

In addition, Appellant avers that the trial court erred in not merging the three convictions because the offenses arose from a single incident involving one victim. Appellant relies on *State v. Jeffrey Eugene Wright*, No. M1999-00647-CCA-R3-CD, 2000 WL 264224 (Tenn. Crim. App. Mar. 10, 2000), to support his argument that double jeopardy requires the three convictions to be merged. *Wright* applied the test set forth in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996). *Denton* was abrogated by our Supreme Court in *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012). Under *Watkins*, the appropriate test to analyze double jeopardy issues is the two-part test set out in *Blockburger v. United States*, 284 U.S. 299 (1932). The *Blockburger* test requires this Court to first determine if the offenses arose

from the same act. If the answer is yes, the Court must then determine if the offenses "constitute the same offense." *Id.* at 304. If one offense includes an element not included in the other offense, then the offenses are "distinct" and the legislature "is presumed to have intended to allow the offenses to be punished separately." *Watkins*, 362 S.W.3d at 545-46.

"Whether Defendant's convictions violated double jeopardy is a mixed question of law and fact, which is reviewed *de novo* without any presumption of correctness." *Id.* at 539 (citing *State v. Thompson*, 285 S.W.3d 840 (Tenn. 2009)). The Double Jeopardy Clause of the United States Constitution and the Tennessee Constitution, as applied to the facts of this case, protect "against multiple punishments for the same offense imposed in a single prosecution." *Id.* at 541.

In this case, the first step of the *Blockburger* test is met because the offenses arose from the same act. Therefore, the issue is whether any of the three convictions were for the same offense.

### Criminal Attempt: Second Degree Murder and Aggravated Assault

We must first determine if the elements of criminal attempt to commit second degree murder and aggravated assault are distinct.

At the time these offenses were committed, aggravated assault was defined in Tennessee Code Annotated section 39-13-102, which provides in pertinent part:

> (a) A person commits aggravated assault who:
> (1) Intentionally or knowingly commits an assault as defined
> in § 39-13-101, and:
>     (A) Causes serious bodily injury to another; or
>     (B) Uses or displays a deadly weapon ...

Assault is defined in Tennessee Code Annotated section 39-13-101, which provides in pertinent part:

> (a) A person commits assault who:
> (1) Intentionally, knowingly or recklessly causes bodily injury
> to another; [or]
> (2) Intentionally or knowingly causes another to reasonably fear imminent
> bodily injury...

It is well established that aggravated assault is not a lesser-included offense of criminal attempt to commit second degree murder. *State v. Albert James Saavedra,* No. M2004–02889–CCA–R3–CD, 2006 WL 618299 (Tenn. Crim. App., Mar. 13, 2006), *perm. app. denied* (Tenn. Aug. 21, 2006); *State v. Korey Bradley*, No. W2009-02024-CCA-R3-CD, 2011 WL 3689032 (Tenn. Crim. App. Aug. 22, 2011), *perm. app. denied* (Tenn. Jan. 11, 2012).

As previously stated, criminal attempt to commit second degree murder requires conduct that amounts to a substantial step toward the commission of the knowing killing of another. Aggravated assault requires an assault and "serious bodily injury to another" under section 102 (a)(1)(A), or an assault in which a defendant "uses or displays a deadly weapon" under section 102 (a)(1)(B). The statutory elements of aggravated assault are not the same as the statutory elements for criminal attempt to commit second degree murder. Criminal attempt to commit second degree murder and aggravated assault do not constitute the same offense under the *Blockburger* test, and the offenses are distinct under *Watkins*. We conclude that the Tennessee legislature intended to allow criminal attempt: second degree murder and aggravated assault to be punished separately**.**

### The Two Aggravated Assault Convictions

The State concedes that the two aggravated assault convictions should be merged because assault committed by causing serious bodily injury and assault committed by the use or display of a deadly weapon are two ways to commit the same offense of aggravated assault. In *State v. Addison*, 973 S.W.2d 260 (Tenn. Crim. App. 1997), this Court affirmed the merger of a felony murder conviction with the conviction for premeditated murder, stating:

> Such a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed "charges" or "convictions." *See, e.g., State v. Davis,* 613 S.W.2d 218, 221 (Tenn. 1981). Therefore, the trial court did not err by merging counts one and two instead of dismissing count two.

*Addison*, 973 S.W.2d at 266-67. Based on the reasoning used to merge the convictions of a defendant found guilty of premeditated murder and felony murder, we agree with the State's position regarding merger of the two aggravated assault convictions in this case. Even though the elements of the two types of aggravated assault are distinct, there is still only one assault and one victim. The two aggravated assault convictions must be merged into a single judgment.

## CONCLUSION

The conviction for criminal attempt to commit second degree murder and the two aggravated assault convictions are affirmed. However, we remand the case to the trial court for merger of the two aggravated assault convictions into one judgment and for correction of the judgment in Count 3 to reflect the correct code section, Tenn. Code Ann.§ 39-13-102, rather than § 39-13-201.

_____
ROBERT L. HOLLOWAY, JR.,
SPECIAL JUDGE