FILED

02/26/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 18, 2026

## STATE OF TENNESSEE v. ANTHONY D. DEAN, JR.

**Appeal from the Criminal Court for Knox County**
**No. 123518   Steven Wayne Sword, Judge**

————————————————————

### No. E2025-00297-CCA-R3-CD

————————————————————

Defendant, Anthony D. Dean, Jr., was convicted by a Knox County jury of possession with intent to manufacture, deliver, or sell 0.5 grams or more of cocaine, a Class B felony, (count two) and possession with intent to manufacture, deliver, or sell a Schedule V controlled substance (Gabapentin), a Class E felony (count five), along with other charges not at issue in this appeal. The trial court sentenced Defendant to an effective sentence of thirty-five years' incarceration. Defendant appeals, arguing the evidence was insufficient to support his convictions, the trial court erred in admitting prior convictions involving possession of cocaine with intent to manufacture, deliver, or sell, and the trial court erred by allowing a police officer to testify as both a fact witness and an expert witness. Upon review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and J. ROSS DYER, J., joined.

Gerald L. Gulley, Jr. (on appeal) and Michael Cabage (at trial), Knoxville, Tennessee, for the appellant, Anthony D. Dean, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General and Joshua R. Gilbert, Assistant Attorney General (*pro hac vice*); Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural Background

In January 2023, a Knox County grand jury returned an eleven-count indictment charging Defendant with possession with intent to manufacture, deliver, or sell 0.5 grams or more of cocaine, a Class B felony, (count two) and possession with intent to manufacture, deliver, or sell a Schedule V controlled substance (Gabapentin), a Class E felony (count five), along with other charges not at issue in this appeal.[1]  Defendant filed a motion to suppress evidence seized during a routine traffic stop and subsequent search of Defendant and his vehicle.  Following a hearing, the court denied Defendant's motion and the case proceeded to trial.

Prior to trial, the State filed a notice of intent to introduce proof of Defendant's four prior felony convictions for possession with intent to sell cocaine to prove Defendant's intent to manufacture, deliver, or sell the drugs found in his possession in this case.  The court conducted a hearing to determine the admissibility of the prior convictions under Tennessee Rule of Evidence 404(b).  The State emphasized that the four prior convictions were "highly probative and relevant to the issue of intent." Defendant argued that because the State lacked evidence to sufficiently prove Defendant's intent to manufacture, deliver, or sell the drugs in this case, it wanted to use the prior convictions to bolster its case.  Defendant further argued that if the prior convictions were admitted, the prejudice could not be cured by a jury instruction.  The court found that the State had presented clear and convincing evidence, through certified judgments, of Defendant's prior convictions, but reserved its decision until it could "make a determination that the probative value of these prior convictions has reached the threshold that it overcomes that danger of unfair prejudice."  Immediately after opening statements, the court ruled in favor of the State, noting that in his opening, Defendant said that "he had no intent to sell anything and the State must prove he intended to sell these drugs."  In raising the issue of intent, Defendant made the prior convictions "highly probative to his intent on this matter."

At trial, Officer Dylan Bradley of the Knoxville Police Department's ("KPD") drug interdiction unit testified about the traffic stop and vehicle search that led to Defendant's arrest.  After voir dire examination of Officer Bradley and over Defendant's

---

[1] In addition to the charges relevant on appeal, Defendant was charged with:  unlawful possession of a firearm after having been convicted of a felony drug offense (count 1); possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony (counts 3, 4, 6, and 7); simple possession/casual exchange of marijuana (count 8); simple possession/casual exchange of Buprenorphine (count 9); possession of unlawful drug paraphernalia (count 10); and, failure to display certificate of registration (count 11).  Prior to trial, the State dismissed counts 8, 9, and 10.

objection, the court recognized Officer Bradley as an expert witness in street-level narcotics. The court instructed the jury on Officer Bradley's role as an expert witness, stating,

> [W]hen the Court recognizes a witness as an expert, that witness is then allowed to render their opinion within their area of expertise.
>
> Now, just because the Court has deemed Sergeant Bradley an expert, it does not mean that you are bound to accept his opinion. The same as with any other witness, it [is] your job to judge the weight and credibility to be given to his testimony. But since I have deemed him, under the law, as an expert, he can render his opinion.

Officer Bradley testified that on October 21, 2021, he was patrolling northbound I-275 when he observed Defendant driving a vehicle with expired tags. Officer Bradley initiated a traffic stop, approached Defendant's vehicle on the passenger side, and requested Defendant roll down the vehicle's windows because the window tint was too dark to see inside the vehicle. When Officer Bradley asked for Defendant's driver's license, registration, and proof of insurance, Defendant retrieved his driver's license from a bag on the passenger seat and then opened the glovebox to obtain the other documents. When Defendant opened the glovebox, Officer Bradley observed a bag containing a leafy-green substance, which he suspected to be marijuana. Officer Bradley then asked Defendant to step out of the vehicle and move to the front of Officer Bradley's patrol car.

While Defendant was walking to the patrol car, Officer Bradley noticed a small rectangular object in Defendant's front pocket, which he believed could be a pocketknife. He then handcuffed Defendant and patted him down. Defendant consented to Officer Bradley's removal of the object from his pocket. During that process, Officer Bradley felt what appeared to be a bag with a rock-like substance in it. He removed the bag and placed it on the hood of his patrol car. Defendant did not reply when Officer Bradley asked what the substance was. However, when Officer Bradley asked if there was anything in the vehicle he needed to know about, Defendant told him there was a handgun in the vehicle and admitted that he was not permitted to possess a handgun. Officer Bradley placed Defendant in the backseat of his patrol car and searched Defendant's vehicle.

The search of Defendant's vehicle was recorded by Officer Bradley's body-worn camera, and the video was played for the jury at trial. When Officer Bradley and a second officer searched the bag on the front passenger seat, they recovered a loaded .45 caliber handgun with an extended magazine, a box of sandwich bags, some smaller bags, an "unused notebook ledger," and a digital scale with white powder residue on it. Further

inspection of the bag removed from Defendant's pocket revealed that, in addition to the rock-like substance Officer Bradley felt during the pat down, the bag contained several smaller bags filled with substances that appeared to be drugs. Defendant's wallet contained a small amount of cash.

Officer Bradley opined that based on his experience and training, people dealing in narcotics used scales like the one found in Defendant's vehicle to weigh narcotics for sale. He said that the white powder residue on the scale indicated that the scale was used to weigh raw narcotics, as opposed to narcotics which had already been placed into bags. Officer Bradley also noted that other items found in Defendant's vehicle, such as the bags, notebook, and handgun, were typically associated with the manufacture, delivery, and sale of narcotics, and not with personal usage. Officer Bradley stated he did not find any paraphernalia, such as syringes, spoons, rolling papers, or crack pipes, in Defendant's vehicle that would indicate the drugs in Defendant's possession were for personal use. Additionally, Officer Bradley testified that officers had recently been "seeing [Gabapentin] used as a cutting agent for heroin a lot." Officer Bradley admitted that "absent the accessories," the amounts of each drug Defendant possessed could be for personal use, but based on his knowledge, experience, and the "totality of what [he] found," it was his opinion that Defendant possessed the drugs with the intent to manufacture, deliver, or sell them.

Special Agent Jessica Sosa, a forensic scientist with the Tennessee Bureau of Investigation, testified as an expert in forensic chemistry. Agent Sosa conducted testing on two substances in this case. She first analyzed a white, rock-like substance, which was found in the bag, along with other drugs, removed from Defendant's pocket; it weighed .97 grams and was confirmed to be cocaine, a Schedule II drug. The second substance she analyzed was a white powder substance, also found in the bag taken from Defendant's pocket; it weighed 1.96 grams and was confirmed to be Gabapentin, a Schedule V drug. Agent Sosa stated that she did not know if the amount of either drug could be a "user amount."

Before the State rested its case, it admitted into evidence, over Defendant's renewed objection, certified copies of Defendant's prior convictions for possession with intent to sell cocaine. After the convictions were read into the record, the court gave the jury the following limiting instruction:

> I want to give you an instruction on those judgments that have just been entered, folks. One of the issues in this case is whether or not, if the defendant possessed the controlled substances, whether or not it was for personal use, what we call simple possession, or possessed with the intent to sell, deliver or manufacture.

Now, normally, any prior convictions or any prior criminal conduct by a defendant is inadmissible in a trial. And the reason that is is because it would be inappropriate to convict somebody with a criminal offense because they did something in the past. It's what we call propensity evidence. That's improper. However, there are some exceptions that will allow certain prior convictions to come into evidence for very limited reasons. And this is one of those situations.

The Court will introduce these prior convictions, over defense objection, for a very limited purpose. And that purpose is only to help you decide whether or not the drugs that were allegedly possessed on October 21st, '21, were for the purpose of simple possession or with the intent to sell, deliver -- sell, deliver or manufacture. So it only goes to intent. You can't look at these judgments and say, because he's done this in the past, he must have done it again. That's improper. But you can consider it, if it helps you determine whether or not these drugs were possessed with the intent to sell, deliver or manufacture.

Defendant presented no proof. The court then reviewed the jury charge with the parties. When Defendant asked about a jury instruction on expert witness testimony, the court stated its intent to use the pattern jury instruction, to which Defendant replied "Okay. Then that's fine."

The jury found Defendant guilty on all counts, and the court imposed a total effective sentence of thirty-five years' incarceration. Defendant filed a motion for a new trial, arguing that the evidence was insufficient to prove he possessed the cocaine and Gabapentin with the intent to manufacture, deliver, or sell them, that the admission of Defendant's prior felony convictions was improper, and that Officer Bradley's testimony as an expert witness was prejudicial. The court denied the motion, and Defendant filed a timely notice of appeal.

## Analysis

On appeal, Defendant argues that (1) the evidence was insufficient to support his convictions for possession with intent to manufacture, deliver, or sell 0.5 grams or more of cocaine and possession with intent to manufacture, deliver, or sell Gabapentin; (2) the trial court erred by allowing the introduction of Defendant's prior convictions for possession with intent to sell cocaine, resulting in unfair prejudice; and, (3) the trial court erred by allowing Officer Bradley to testify as both a fact witness and an expert witness.

## I. Sufficiency of the Evidence

Defendant contends that given the small amount of drugs and money in his possession at the time of his arrest, the absence of a confidential informant identifying Defendant as a drug seller, and the lack of information in the notebook or Defendant's cell phone indicating Defendant was selling or delivering illegal drugs, the evidence presented at trial was insufficient to prove his intent to manufacture, deliver, or sell the drugs beyond a reasonable doubt. The State responds that the evidence overwhelmingly proved that Defendant possessed the drugs with the intent to manufacture, deliver, or sell them.

When evaluating the sufficiency of evidence on appeal, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence presented at trial and to all reasonable and legitimate inferences that may be drawn from the evidence. *State v. Gibson*, 506 S.W.3d 450, 458 (Tenn. 2016). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Davis*, 466 S.W.3d 49, 70 (Tenn. 2015). A jury's verdict of guilt, approved by the trial court, resolves conflicts of evidence in the State's favor and accredits the testimony of the State's witnesses. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict replaces the presumption of innocence with one of guilt, and on appeal, the burden of demonstrating that the evidence is insufficient to support the conviction is on the defendant. *State v. Cole*, 155 S.W.3d 885, 897 (Tenn. 2005). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In *Dorantes*, our supreme court held that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *Id.* at 381.

It is unlawful for a person "to knowingly possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the

circumstances exist." *Id.* § 39-11-302(b). Cocaine is a Schedule II controlled substance; Gabapentin is a Schedule V controlled substance. *Id.* §§ 39-17-408, -414.

Proof that a defendant possessed drugs with the intent to manufacture, deliver, or sell often "consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence." *State v. Keyt*, No. E2024-00046-CCA-R3-CD, 2025 WL 40280, at *12 (Tenn. Crim. App. Jan. 7, 2025), *perm. app. denied* (Tenn. May 23, 2025); *see Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973); *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983) (observing that a jury may derive a defendant's intent from both direct and circumstantial evidence). Additionally, a jury may infer "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419. "Items such as scales, baggies, and weapons in the vicinity of narcotics and/or a defendant have been among those objects found appropriate for consideration in these circumstances." *Keyt*, 2025 WL 40280, at *12 (quoting *State v. Morales*, No. E2001-01768-CCA-R3-CD, 2003 WL 21297308, at *8 (Tenn. Crim. App. June 5, 2003).

Here, it is undisputed that Defendant possessed cocaine and Gabapentin at the time of his arrest. The question for the jury was whether Defendant possessed the drugs with the intent to manufacture, deliver, or sell them. When viewed in the light most favorable to the State, the evidence at trial shows that in addition to the drugs, Defendant had in his possession plastic bags, a notebook, a digital scale with white powder residue on it, and a loaded handgun with an extended magazine. Officer Bradley opined that these items were consistent with items typically associated with the sale of drugs. Officer Bradley also testified that Defendant was not in possession of any items that would suggest the drugs in his possession were for personal use. The jury was also allowed to consider, for the purpose of determining intent, Defendant's prior convictions for possession with intent to sell cocaine. Based on this evidence, the jury could reasonably conclude that Defendant possessed the cocaine and Gabapentin with the intent to manufacture, deliver, or sell. Defendant is not entitled to relief on this issue.

## II. Admission of Prior Convictions

Next, Defendant argues that the trial court erred by admitting certified judgments of his four prior felony convictions for possession with intent to sell cocaine under Tennessee Rule of Evidence 404(b), asserting the evidence was used for impermissible propensity evidence and that only the facts surrounding the instant arrest should have been considered. The State responds that the trial court strictly complied with Rule 404(b)'s procedural safeguards and admitted the prior convictions solely on the material

issue of intent, which Defendant squarely placed in dispute by claiming the drugs were for personal use.

Rule 404(b) is "one of exclusion," but evidence of other crimes, wrongs, or acts may be admitted for non-propensity purposes, such as proof of intent or to rebut accident or mistake, provided the court: (1) holds a jury-out hearing; (2) identifies a material issue other than conduct conforming with a character trait and states its reasons on the record; (3) finds clear and convincing proof of the other act; and (4) determines that the probative value is not outweighed by the danger of unfair prejudice. *See* Tenn. R. Evid. 404(b); *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *State v. Sexton*, 368 S.W.3d 371, 402-04 (Tenn. 2012). Where a trial court substantially complies with these prerequisites, we review its ruling for abuse of discretion. *DuBose*, 953 S.W.2d at 652.

Defendant's intent was the central contested element at trial as Defendant insisted the drugs were for personal use. "When the presence or absence of a particular intent which is necessary to constitute the crime charged is a contested issue, and evidence of a prior crime tends to show that intent, it may render the prior crime admissible." *State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985) (citing *Mays v. State*, 145 Tenn. 118, 141 (1921)). This court has consistently upheld the admission of prior drug sales or convictions to establish intent or to rebut claims of casual exchange/personal use when Rule 404(b)'s procedure is strictly followed. *See, State v. Little*, 854 S.W.2d 643, 649 (Tenn. Crim. App. 1992) (holding that evidence of the defendant's prior drug transactions was admissible to show intent to sell drugs and rebut the defendant's contention that he was "a victim of circumstance"); *State v. Clay*, No. W2009-02314-CCA-R3-CD, 2011 WL 890914, at *8 (Tenn. Crim. App. Mar. 15, 2011) (finding no abuse of discretion when the trial court admitted evidence of the defendant's prior convictions for the sale of cocaine to rebut the defendant's assertion that he was only a drug user and to show his intent); *State v. Giddens*, No. M2002-00163-CCA-R3-CD, 2004 WL 2636715, at *3 (Tenn. Crim. App. Nov. 15, 2004) (finding no error in admitting witness testimony where evidence of prior drug sales indicated an intent on the part of the defendant to sell the drugs he possessed); *State v. Jones*, No. M2017-01666-CCA-R3-CD, 2020 WL 2079270 (Tenn. Crim. App. Apr. 30, 2020) (noting that "evidence of prior drug sales is probative of the defendant's knowledge and intent to possess drugs for resale" and that a limiting instruction reduced any prejudicial effect).

Here, the trial court conducted a jury-out hearing, found that the prior convictions were material for the issue of intent, found clear and convincing proof of the prior convictions based on certified judgments, and initially deferred its ruling on the probative value and prejudice. However, after Defendant argued during his opening statement that he possessed the drugs solely for his personal use, the court found that the probative value of the convictions relative to Defendant's intent outweighed the danger of unfair

prejudice. Further, the trial court gave the jury an appropriate limiting instruction to mitigate the risk of unfair prejudice. Jurors are presumed to follow the court's instructions. *See State v. Inlow*, 52 S.W.3d 101, 106 (Tenn. Crim. App. 2000).

Because the trial court applied the correct legal standards, made the necessary findings, and reached a decision that was neither illogical nor unreasonable, we find there was no abuse of discretion in admitting the certified judgments of Defendant's prior felony drug convictions under Rule 404(b) for the limited purpose of proving intent. Defendant is not entitled to relief on this issue.

### III.    Dual Role Testimony by Law Enforcement Officer

Finally, Defendant contends the trial court erred by allowing Officer Bradley to testify both as a fact witness regarding the stop and search and as an expert in street-level narcotics. He further asserts that the court should have given a specific "dual-role" jury instruction. The State responds that Defendant has waived any issue regarding the jury instruction by failing to object at trial or raise the issue in his motion for new trial. The State also contends that Officer Bradley was properly qualified under the Tennessee Rules of Evidence, that the court gave the standard expert-witness instruction, and that Tennessee law does not require a special dual-role instruction.

Regarding Officer Bradley's testimony as an expert witness, "Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court." *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002). Accordingly, a trial court's evidentiary ruling on the admissibility of an expert's testimony will not be overturned absent an abuse of discretion. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). A court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997). An expert witness may express his opinion based on "scientific, technical, or other specialized knowledge." Tenn. R. Evid. 702. Before the trial court permits such testimony, the witness's proponent must show (1) that the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and (2) that his opinion will "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.*

This court has held that "[w]hen the State establishes that an officer possesses the necessary training, experience, and familiarity with the illicit drug trade, the officer may testify [as an expert] about matters relating to the business of buying, selling, trading, and use of illegal drugs." *State v. Elliot*, 366 S.W.3d 139, 147 (Tenn. Crim. App. 2010);

*Jones*, 2020 WL 2079270, at *6-7 (affirming trial court's ruling that an officer had sufficient qualifications to testify as an expert in the illegal drug business based on the officer's extensive experience in drug investigations and interdiction).

Here, Officer Bradley testified as to his significant education, training, and experience as an officer with KPD's drug interdiction unit. His testimony explained street-level packaging, scales with residue, notebooks, and the role of firearms in narcotics distribution and tied those facts to the intent-to-manufacture, deliver, or sell element at issue. The court gave the pattern instruction emphasizing that the jury was not bound by any expert's opinion, which further mitigated any risk of undue weight. In similar circumstances, this court has upheld admitting an officer's dual-role testimony when the officer's qualifications are established and the trial court provides the standard expert instruction. *See Keyt*, 2025 WL 40280, at *14-16 (upholding detective's qualification and expert opinions on pricing, packaging, and the significance of scales and cash to prove intent); *Patterson v. State*, No. E2022-01401-CCA-R3-PC, 2023 WL 5969299, at *10-12 (Tenn. Crim. App. Sept. 14, 2023) (recognizing Tennessee authority permitting officers to testify as experts where training/experience supports it).

As to Defendant's claim about the lack of a jury instruction on the dual role of Officer Bradley, this issue is waived. Under Tennessee law, to preserve a jury-instruction complaint for appellate review, a defendant must lodge a timely, specific objection and later raise the issue in a motion for new trial. *See* Tenn. R. Evid. 103(a)(1); Tenn. R. Crim. P. 51(b); Tenn. R. App. P. 3(e). Here, when the court indicated it would give the pattern jury instruction on expert witnesses, defense counsel replied, "Okay . . . that's fine." The court then instructed the jury that it was not "bound to accept [an expert's] opinion," and that they would have to decide whether to "believe [the] testimony [of the expert]" and "rely upon it."

Because Defendant failed to timely object and affirmatively agreed to the standard expert witness instruction given and failed to raise the issue regarding the need for a dual-role instruction in his motion for new trial, Defendant has waived the issue. As the issue was not preserved, our review, if any, is for plain error. However, in his brief, Defendant did not request plain error review, and in any event, our court has expressly declined to adopt a categorical requirement for a dual-role instruction. Defendant is not entitled to relief on this issue.

**CONCLUSION**

Based on the foregoing reasons, the judgments of the trial court are affirmed.


s/*Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE